# Flitcraft *v.* Commonwealth Title Insurance and Trust Company, Appellant.

*Deed—Trustee—Forgery—Notice—Mortgage—Equity.*

On a bill in equity to declare a deed null and void and for the cancellation of two mortgages, it appeared that the plaintiff was induced by false representations of an attorney at law to convey to the latter as trustee certain unincumbered real estate. In addition to the word "trustee" after the name of the grantee in the deed, the attorney gave to the grantor an unacknowledged declaration of trust. The attorney took the deed to a trust company and stated that he was the owner of the premises, and requested a loan on a mortgage. He was told that no money could· be loaned to him individually on account of the word "trustee" in the deed. He thereupon took the deed, erased the word "trustee" filling in the blank space with a red line. The erasure was visible on the face of the deed. Subsequently he made a second application to the trust company for a loan on a mortgage, and was this time successful. The trust company placed the deed on record, and insured the title for a building association which made to the attorney a loan on a second mortgage on the same premises. Thereafter the attorney conveyed the reversion to a third party for a small consideration. The bill in equity was filed against the trust company, the building association, and the person to whom the reversion had been conveyed. *Held* (1), that the trust company was visited with notice that the attorney was a mere trustee; (2) that the word "trustee" although physically effaced, was in legal contemplation ever present in the deed, and put the defendants upon inquiry; (3) that the word "trustee" was not a mere description of the person; (4) that the alteration of the deed was a forgery and the deed thereby avoided; (5) that complainant was under no duty to make tender to the person to whom the reversion had been sold; (6) that complainant was entitled to equitable relief against all three of defendants.

Argued Jan. 20, 1905.  Appeals, Nos. 309 and 342, Jan. T., 1904, by defendants, from decree of C. P. No. 2, Phila. Co., Dec. T., 1902, No. 2917, on bill in equity in case of Helen M. Flitcraft v. Commonwealth Title Insurance and Trust Company, The Commonwealth Title Insurance and Trust Company, Guardian of Horace and Mary Dubree, and the Ideal Building and Loan Association, Arthur W. Depue and Henry N. Robison.  Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Bill in equity for the cancellation of mortgages and a deed.

BARRATT, J., filed the following opinion :

### FINDINGS OF FACT.

In May, 1902, the complainant was the owner in fee simple in severalty of premises 714 South Tenth street, Philadelphia, and in exclusive possession of the same by her tenant, and the same were free from incumbrance.  Said tenant continued to occupy the premises until October 24, 1902, and since that date the complainant has held legal possession.  The value of the premises was, and is, about $5,400.

Early in June, 1902, Henry N. Robison, a member of the Philadelphia bar and one of the defendants, acting for a supposititious client (there was no such person as John Pollo, the alleged purchaser), offered the complainant $5,400 for the premises, and the complainant entered into an oral agreement with Robison to convey the same to his client for the sum named, settlement to be made and possession delivered about September 1, 1902.

About this time (early in June), Robison and one Edmund F. Harte, a scrivener, formed a conspiracy to defraud the complainant of the premises in the following manner: Robison was to fraudulently induce the complainant to convey the premises to him, and then without her knowledge or consent was to borrow money on them and in conjunction with Harte use this money for their own schemes and purposes, hoping, it seems, to make good the amount before the time fixed for the settlement, and thereby cover up the crime.

In pursuance of this fraudulent compact between Robison and Harte, Robison falsely represented to the complainant

that the premises were subject to an old ground rent that had been paid off but never extinguished by a formal conveyance; and advised her to deed the premises to him as trustee for the purpose of having the pretended flaw in the title removed by decree of court. The complainant, having known Robison for some years, adopted his suggestion without consulting counsel, and on June 18, 1902, executed and acknowledged a deed of the premises to Robison as trustee, and left the same with Robison to be recorded. This deed does not set forth the terms of any trust but at the time of execution contained the word "trustee" after the grantee's name both in the indorsement and in the following clause in the body of the deed: "This Indenture made the 18th day of June, 1902, between Helen M. Flitcraft of the City of Philadelphia, single woman, of the one part grantor, and Henry N. Robison, of the same place, trustee, of the other part grantee."

At the time of the delivery of said deed, Robison gave to the complainant a written acknowledgment that he held the property for her use and benefit and to and until she desired the same reconveyed to her or to anyone she may designate.

The sole object of the conveyance to Robison as trustee, as explained by Robison and understood by the complainant, was to procure the extinguishment of the alleged ground rent by decree of court, whereupon Robison was to reconvey the premises to the complainant or join with her in making title to the purchaser. Robison afterwards informed the complainant that he had made application to the court for the purpose named and that the decree had been entered; but in point of fact no such proceedings were taken, or even contemplated, and the whole matter of the ground rent was a false pretense invented by Robison and Harte to secure control of the property.

None of the consideration money mentioned and receipted for in the said deed has been received by the complainant, excepting the sum of $200, for which sum Robison sent the complainant his check on July 19, 1902, as "the amount paid on account of purchase of premises 714 South Tenth street." This money was paid by Robison out of his own resources.

On June 18, immediately after the execution and acknowledgment of the deed to Henry N. Robison, trustee, Robison

and Harte took said deed to the office of the Commonwealth Title Insurance and Trust Company, one of the defendants, and Robison handed the deed to William H. Gretzinger, the application clerk of said company, for the purpose of having the same recorded. Mr. Gretzinger had theretofore passed upon the form of the deed, and knew that the deed was executed, and was aware that Robison had applied to said company for a loan upon the premises. After an inspection of the deed, Mr. Gretzinger returned it to Robison, with the explanation that the company would not lend money upon a trustee's title unless the power to mortgage was shown; and that, if the premises belonged to Robison as he claimed, he had better scratch out the word " trustee," and the deed would do.

On the afternoon of the same day, June 18, in an office adjoining Robison's in the Drexel Building, Harte began and Robison completed the erasure of the word "trustee" from the deed, both in the body thereof and in the indorsement. Said erasure was made without the knowledge or consent of the complainant and with fraudulent intent. The fact of the erasure is manifest upon the face of the deed.

Two days thereafter, on June 20, Robison and Harte left the deed, forged as aforesaid, with Axel Teisen, the settlement clerk of the Commonwealth Title Insurance and Trust Company, and said company, without making any investigation or inquiry concerning said deed or the title of Robison thereunder, lodged the same for record.

On the said 20th day of June, Robison, in his own name, without the knowledge or consent of the complainant, executed a mortgage of the premises to the Commonwealth Title Insurance and Trust Company, guardian of Horace and Mary DuBree, and received from the company through the said Axel Teisen in settlement therefor the sum of $3,000, less costs and charges, which money was divided between Robison and Harte and fraudulently appropriated by them. Said mortgage was lodged for record by the said company.

On July 16, 1902, Robison, in his own name, without the knowledge or consent of the complainant, executed a second mortgage of the premises to the Ideal Building and Loan Association, another of the defendants, and received through the Commonwealth Title Insurance and Trust Company in settle-

ment therefor the sum of $1,200, less costs and charges, which money Robison fraudulently appropriated to his own use. The title of the Ideal Building and Loan Association as said mortgagee was insured by the Commonwealth Title Insurance and Trust Company and the mortgage lodged for record by the said company.

On August 7, 1902, Robison, in his own name, without the knowledge or consent of the complainant, executed a conveyance of the premises in fee to Arthur W. Depue, another of the defendants, and received in settlement therefor the sum of $200, which money Robison fraudulently appropriated to his own use. The deed to Depue was acknowledged on August 7, but not recorded until September 2, 1902. At the time of the last conveyance, and as part of said transaction, the said Depue agreed to reconvey the premises to Robison upon payment of $225 within sixty days. But no evidence was offered to show that Robison had exercised his option to repurchase.

About September 1, 1902, the date fixed for the settlement under the agreement of sale, the complainant first learned of the forgery of the deed and the execution of the fraudulent mortgages and conveyance; and, thereupon, the complainant notified the two mortgagees and Mr. Depue of the frauds perpetrated, and made formal demand upon them to deliver up the said mortgages and conveyance for cancellation and to annul the same of record. And, upon their refusal so to do, the complainant filed the present bill.

FINDINGS OF LAW.

The defendants made no inquiry whatever. They contend that the word "trustee" is mere descriptio personæ, like "baker" or "plumber," and, therefore, surplusage. But we cannot accept this view, and find the word "trustee" to be an essential feature of the deed; and as grantee thereunder Robison had no power, express or implied, to mortgage or convey the premises. In dealing with Robison, the defendants were bound to know the extent of his authority, and the most superficial inquiry would have led up to the contemporaneous writing of June 18, and the circumstances surrounding its execution, and the whole conspiracy would have been laid bare.

That the word " trustee " constitutes notice is sustained by the authorities :

In matters relating to mortgages and stocks : Duncan v. Jaudon, 82 U. S. 165 ; Brayard v. Farmers' and Mechanics' Bank, 52 Pa. 232 ; Swan v. Produce Bank, 24 Hun, 277 ; Sturtevant v. Jacques, 96 Mass. 523 ; Shaw v. Spencer, 100 Mass. 382 ; Smith v. Burgess, 133 Mass. 511..

In deeds of real estate (a fortiori) : Union Pacific Railroad Co. v. Durant, 95 U. S. 576 ; Mercantile National Bank v. Parsons, 54 Minn. 56 (55 N. W. Rep. 825) ; Johnson v. Calnan, 19 Colorado, 168 (34 Pac. Rep. 905).

We have carefully read the cases cited in behalf of the defendants purporting to establish a contrary doctrine, but find nothing in them to warrant the conclusion sought to be deduced therefrom.

The defendants further contend that the word " trustee " was not notice because of the statute of frauds.  Were they bound to take cognizance of a trust that fell under the ban of the statute ?  The argument would prove too much ; for, in thus taking title from a trustee, the defendants assumed the burden of establishing the terms of the trust in order to show the trustee's power to convey.  In the present case, however, the trust is not only manifested by writing (the contemporaneous writing set forth in paragraph VI of the bill), but comes directly within the terms of the proviso and might be established by parol : Act of April 22, 1856, sec. 4, proviso, P. L. 532.

And in express confirmation of the notice conveyed by the term " trustee " was the complainant's possession of the premises by her tenant.  The conveyance to Robison as trustee was consistent with such possession, and the defendants were thereby again charged with the duty of inquiry, and due inquiry must have revealed the fact that Robison could confer no title : Bispham's Equity (5th ed.), page 381 ; Hood v. Fahnestock, 1 Pa. 470 ; Rowe v. Ream, 105 Pa. 543.

2. The alteration of the deed was a forgery, and the deed was thereby avoided, and could not thereafter be used in any way whatsoever to the prejudice of the complainant.

That the alteration was fraudulent in design is proven beyond a doubt ; that it is material in effect is equally clear. The removal of the word " trustee " destroyed the identity of

the instrument and altered its legal import, changed the relationship of the parties and varied the mode of proof concerning their rights, and opened the way to fraud and resulted in actual damage : Getty v. Shearer, 20 Pa. 12 ; Neff v. Horner, 63 Pa. 327 ; Craighead v. McLoney, 99 Pa. 211 ; Wallace v. Harmstad, 15 Pa. 462, 467.

The legal effect of the forgery was twofold. It rendered the deed void in the hands of Robison ("as to any benefit to be derived to the party who altered it :" Withers v. Atkinson, 1 Watts, 236, 250), so that Robison could not thenceforth use the deed as the basis of any title or charge in prejudice of the complainant's right ; and it made the deed incompetent as evidence, so that the defendants could not resort to the same as a necessary link in the chain of their title. The argument is broader than the needs of the present case. Here, as we have seen, Robison had no power of disposition under the deed in its original state ; but, even if the deed had given him such power, his right to exercise it would have been forfeited and nullified by the act of forgery : Arrison v. Harmstead, 2 Pa. 191 ; Wallace v. Harmstad, 15 Pa. 462 ; Wallace v. Harmstad, 44 Pa. 492 ; Reck v. Clapp, 98 Pa. 581 ; McIntyre v. Velte, 153 Pa. 350.

3. In all the matters mentioned, the complainant acted in a careful, prudent, and businesslike manner. She was not bound to foresee the attempted exercise of a power not conferred, nor the perpetration of a series of crimes. On the other hand, the defendants, although innocent of moral wrong in the transactions referred to, were negligent therein, and their negligence contributed to the successful prosecution of the said frauds. Indeed, it is safe to say that neither the mortgages nor the deed in question could have been foisted upon the defendants if they had exercised common caution.

4. The complainant is under no duty to make tender of or account for the $200 paid to her by the defendant Robison. This money belonged to Robison, who not only makes no demands therefor, but admits the charge of actual fraud in the transaction in which the same was paid : McCaskey v. Graff, 23 Pa. 321 ; Duff v. Wilson 72 Pa. 442.

5. The affidavit made by the complainant in a prosecution before Magistrate Eisenbrown charging the defendant

Robison with embezzlement as trustee, has no bearing upon the rights of the parties in the present proceeding. The legal result of Robison's act is for the court; and it is clear that the defendants cannot rest their claims upon a ratification of forgery, which the policy of the law forbids : Shisler v. Vandike, 92 Pa. 447; Building Assn. v. Walton, 181 Pa. 201.

6. The mortgagees and the grantee Depue have no title for the reasons hereinabove stated; but the title of the defendant Robison as trustee remains. For it is not contended that the forgery of the deed after delivery would operate to revest the title in the grantor. But, the rights of innocent purchasers not being in question, it is clear that the deed to Robison, procured as we have seen by fraud, should not be allowed to stand, and the same is hereby declared null and void.

The relief herein prayed for is, therefore, granted. And counsel will prepare and submit the necessary decrees in accordance with the views expressed in the foregoing opinion. The costs to be paid by the parties defendant in equal shares.

On exception SULZBERGER, P. J., filed the following opinion :

We have carefully considered the numerous exceptions to the findings and conclusions of the trial judge. The fourth exception of the Commonwealth Title Insurance and Trust Company is to the following finding of fact:

" After inspection of the deed, Mr. Gretzinger returned it to Robison, with the explanation that the company would not lend money upon a trustee's title, unless the power to mortgage was shown; and that if the premises belonged to Robison, as he claimed, he had better scratch out the word ' trustee ' and the deed would do."

This finding was based upon the uncorroborated testimony of the forger and was flatly contradicted by Gretzinger, and not sustained by the evidence of the only other witness who could possibly have heard what was said. We think it erroneous to permit a forger's evidence to outweigh that of a witness whose character is quite unimpeached, especially when, as in this case, the testimony is improbable in itself and the obvious motive of the forger in currying favor with his female victim must be presumed to have weighed with him. We therefore sustain the Commonwealth Title Insurance and Trust Company's fourth exception.

It seems to us, however, that with this fact eliminated the case of the Commonwealth Title Insurance and Trust Company is not materially bettered. Its grantor had no title, and it has no title. The only ground, therefore, on which it can stand is that the fraud of which it was the victim is due to the blameworthy carelessness of the plaintiff. In the face of the evidence, this position becomes untenable. The company saw the deed when the word " trustee " was in it. It pointed out that the presence of that word was a material hindrance to the negotiation of the mortgage. When the mortgage was presented, this hindrance was, it is true, removed; but the evidence of its removal by erasure was patent. And yet the company, with this notice of bad faith staring it in the face, advanced the money. This is gross negligence in law, and it would have been gross negligence in fact were it not for the internal machinery of the company. The deed with the word " trustee " in it was originally presented to Mr. Gretzinger, who was the proper party to whom to show it. When the fraudulent alteration was made, it was presented to another clerk of the company, who was, under the company's rules, the proper person to receive it at that stage. Unfortunately he was unaware of what had happened with Mr. Gretzinger, but this fact cannot help the company. The company has no power, by the subdivision of its labors among clerks, to change the general law of the principal's responsibility for acts of his agent. As a corporation, it is bound to know in every department all that has been properly communicated to it in any department, and the mere fact that to carry out this theory is inconvenient in practice, cannot help the company. We concur, therefore, with the learned trial judge, that the plaintiff is entitled to the relief prayed for.

The fourth exception of the Commonwealth Title Insurance and Trust Company is sustained and all the other exceptions are dismissed.

*Error assigned* was the decree of the court.

*Andrew J. Maloney,* with him *Max Herzberg,* and *E. Cooper Shapley,* for appellants.

*William M. Meredith,* for appellee.

PER CURIAM, March 6, 1905:

These judgments are affirmed on the opinion of the court below dismissing exceptions to the findings of the trial judge.