In re Erma C. FUNCHES, Debtor.

**Erma C. Funches and William C. Miller, Plaintiffs,**

v.

**Household Finance Consumer Discount Company, Defendant.**

Bankruptcy No. 07–13883ELF.
Adversary No. 07–00270ELF.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 5, 2008.

David A. Scholl, Regional Bankruptcy Center of SE PA, Law Office of David A. Scholl, Newtown Square, PA, for Debtor/Plaintiffs.

William C. Miller, Philadelphia, PA, pro se.

William J. Levant, Kaplin Stewart, Blue Bell, PA, for Defendant.

## *OPINION*

ERIC L. FRANK, Bankruptcy Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .475

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .476
 A. The Main Bankruptcy Case—Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .476
 B. The State Court Foreclosure Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .476
 C. The AP Complaint and HFC's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . .478

III. THE PARTIES' ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .480
 A. Initial Briefing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .480
 B. The Hearing and Post–Hearing Briefing . . . . . . . . . . . . . . . . . . . . . . . . . . . .481
 1. identity of the "transfers" the Debtor seeks to avoid . . . . . . . . . . . . . . .481
 2. the Debtor's authority to exercise the trustee's avoidance
 powers and the effect of Pennsylvania's Curative Statute . . . . .482

IV. STANDARDS OF REVIEW UNDER RULES 12(b)(1) and 12(b)(6) . . . . . . . . . .482

V. DISCUSSION: JURISDICTIONAL ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .483
 A. The *Rooker–Feldman* Doctrine Does Not Bar Consideration of the
 Debtor's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .483
 B. The *Younger* Abstention Doctrine Is Inapplicable . . . . . . . . . . . . . . . . . . . . .485

VI. THE DEBTOR IS NOT A PARTY WHO CAN ASSERT THIS § 544
 AVOIDANCE CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .486
 A. The Debtor May Not Maintain This Action Jointly with the Trustee . . . . .487
 1. The Trustee is not a voluntary joint plaintiff . . . . . . . . . . . . . . . . . . . . .487
 2. The Trustee has not been effectively joined as an involuntary
 plaintiff under Fed. R. Bankr.P. 7019 . . . . . . . . . . . . . . . . . . . . . . . . . . .487
 a. the standards for involuntary joinder under Rule 19 have
 not been met . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .487
 b. the cases the Debtor relies upon to justify naming the
 Trustee as an involuntary plaintiff are inapposite . . . . . . . . . . .489

B. The Debtor Lacks Statutory Authority to Maintain the § 544
Avoidance Action.....................................................490
 1. the elements of the statutory scheme authorizing a debtor to
 invoke the trustee's avoidance powers: 11 U.S.C. § 522(g)(1)
 and (h)..........................................................490
 2. the § 522(h) requirement that the trustee has not attempted to
 avoid the transfer...............................................492
 3. the Debtor's factual allegation regarding the alleged
 involuntariness of the mortgage transaction renders the
 Debtor's § 544 claim legally deficient...........................493
 4. the Debtor may not invoke the Trustee's avoidance powers
 without satisfying the requirements of 11 U.S.C. § 522(g)(1)
 and (h)..........................................................495

VII. ASSUMING *ARGUENDO* THAT THE DEBTOR MAY ASSERT THE
 § 547 CLAIM, HER CLAIM IS LEGALLY DEFICIENT ..................496

VIII. CONCLUSION ...................................................497

## I. INTRODUCTION

Plaintiff–Debtor Erma C. Funches ("the Debtor") commenced this adversary proceeding ("AP") by filing a two-count complaint purportedly brought on her behalf and on behalf of the William C. Miller, Standing Chapter 13 Trustee ("the Trustee"). In the AP, the Debtor seeks to use the Trustee's strong arm powers to avoid a first-priority mortgage that Defendant Household Finance Consumer Discount Company ("HFC") holds on her home (the "HFC Mortgage"). The Debtor's main contentions are that the HFC Mortgage is avoidable under 11 U.S.C. § 544 because her "signature" on the mortgage is a forgery and because, at the time of its execution, HFC failed to obtain a contemporaneous acknowledgment[1] of the HFC Mortgage by a notary.

This is not the first time the Debtor has raised these alleged deficiencies concerning the HFC Mortgage. Indeed, prior to the filing of the Debtor's bankruptcy petition, the Debtor had asserted these same issues as a defense to a state court foreclosure action which, following a bench trial, resulted in a "non-jury verdict" upholding the HFC Mortgage's validity. The Debtor's subsequent bankruptcy filing has frozen that state court action in place, preventing the non-jury verdict from ripening into a formal judgment. In the second count of the AP Complaint, the Debtor requests that the state court's non-jury verdict be avoided as a preference under 11 U.S.C. § 547.

Presently before the court is HFC's Motion to Dismiss ("the Motion"), which requires consideration of the following questions:

1. Do the *Rooker–Feldman* or *Younger* abstention doctrines mandate the dismissal of the AP as an improper collateral attack on state court proceedings?

2. May the Debtor gain access to the arsenal of avoiding powers Congress reserved for the trustee by naming the trustee as an additional or invol-

---

1. An acknowledgment is "a formal declaration before an authorized public officer," by a person who executed an instrument, that the execution is his or her "free act or deed." *Abraham v. Mihalich*, 330 Pa.Super. 378, 479 A.2d 601, 603 (1984). Typically, an acknowl- edgment is accomplished by the notarization of the instrument by a notary public. Acknowledgment also refers to the "certificate of the officer that the instrument has been so acknowledged." *Id.*

untary plaintiff in an adversary action without prior notice to or consent of the trustee?

3. If not, may the Debtor independently maintain an avoidance action in her capacity as a chapter 13 debtor?

4. Does a bench decision upholding the validity of a mortgage effect a "transfer" of property so as to form the basis for a preference action brought under 11 U.S.C. § 547?

I conclude that:

1. The *Rooker Feldman* and *Younger* abstention doctrines do not mandate the dismissal of the AP.

2. The Debtor may not maintain this avoidance action in the Trustee's name.

3. The Debtor may not independently maintain an avoidance action in her capacity as a chapter 13 debtor because the Complaint does not set forth facts that, if proven at trial, would satisfy the requirements set forth in 11 U.S.C. § 522(g)(1) and (h).

4. The Debtor has not pled a plausible cause of action under 11 U.S.C. § 547, mandating dismissal of Count I of her Complaint.

Accordingly, I will grant HFC's Motion and dismiss the Complaint. The dismissal will be without prejudice to the Debtor's right to file an amended complaint (if she can do so consistent with Fed. R. Bankr.P. 9011) with respect to her § 544 claim, but without leave to amend with respect to her § 547 claim. The dismissal also is without prejudice to the rights of the Trustee.

## II. BACKGROUND

### A. The Main Bankruptcy Case–Overview

The Debtor filed a chapter 13 bankruptcy petition on July 9, 2007. According to her bankruptcy schedules, she owns residential property located at 951 Route 113, Sellersville, Pennsylvania 18960 ("the Sellersville Property").[2] In her schedules, the Debtor valued the Sellersville Property at $545,000.[3] The Sellersville Property is subject to a first priority mortgage held by HFC. HFC has filed a proof of claim in the Debtor's bankruptcy case asserting a secured claim of $574,387.55, with $147,990.61 in prepetition mortgage arrearages—by far, the largest claim filed against the Debtor's estate.

### B. The State Court Foreclosure Action

Prior to the filing of the Debtor's bankruptcy petition, the Debtor and HFC litigated certain issues related to the validity of the HFC Mortgage in a foreclosure action filed in the Bucks County Court of Common Pleas, docketed as No. 05–04428–24–1 ("the Foreclosure Action").[4] The Debtor filed an Answer in the Foreclosure

---

**2.** *See* Debtor's Schedule "A" (Bky. No. 07–13883ELF, Docket Entry No. 11) Hereinafter, I will refer to docket entries in the main bankruptcy case as "Bky. Docket Entry" and those in the AP as "AP Docket Entry".

I may take judicial notice of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R.Evid. 201; *In re Scholl*, 1998 WL 546607, at *1 n. 1 (Bankr.E.D.Pa. Aug.26, 1998); *see*

*also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir.1995).

**3.** *See* Debtor's Schedule "A" (Bky. Docket Entry No. 11)

**4.** In July 2005, the lender that originally financed the Debtor's November 2004 purchase of the Sellersville Property filed the Foreclosure Action. While the Foreclosure Action was pending, the Debtor's note and mortgage were sold to HFC and HFC substi-

Action in which she denied that she had executed the note or mortgage and asserted that the signatures on those documents were forgeries. The Debtor also contended that the acknowledgment of her signature on the loan and mortgage documents was invalid because she never appeared before a notary at the loan closing.

On June 25 and 26, 2007, the state court held a bench trial in the Foreclosure Action, which resulted in the entry of a "non-jury verdict"[5] in HFC's favor. The Non–Jury Verdict awarded HFC damages in the amount of $570,733.10 "plus interest at the rate of $148.83 per day for each day after June 25, 2007 until the entry of judgment and plus costs as provided by law."[6] The state court judge also made certain

factual findings on the record in support of the Non–Jury Verdict,[7] including:

3. [the Debtor] financed $433,200 as the principal amount.

4. [the Debtor] obtained a mortgage loan from Delta Financial Corporation in the original principal amount of $433,200, which loan was intended to be secured.

11. [a]t settlement [the Debtor] executed numerous documents in connection with the loan, including a note and mortgage.

12. that deed was recorded in the Bucks County Recorder of Deeds' office on November 19, 2004.

15. since the transaction of November 10, 2004 [the Debtor has] made no

---

tuted in as the successor plaintiff. *See generally* Foreclosure Action Docket.

A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction. *E.g., In re Soto,* 221 B.R. 343, 347 (Bankr.E.D.Pa.1998).

**5.** The Pennsylvania Rules of Court use the term *"decision"* to refer to a ruling made by a court after a bench trial. *See* Pa. R. Civ. P. 1038 (providing for trial judge to make a "decision" following a bench trial in a civil action); Pa. R. Civ. P. 1141(b) (procedure in mortgage foreclosure action shall conform to rules relating to a civil action except as otherwise provided in the rules governing mortgage foreclosure); 227.4(1) (authorizing entry of judgment upon "the decision" of a judge following a trial without jury). The Foreclosure Action docket refers to the state trial court's decision as a *"non-jury verdict." See* Foreclosure Action Docket Entry dated July 2, 2006. Because both the parties and the state court records refer to the state court's "decision" as a "non-jury verdict," in the remainder of this Opinion I will use the term "Non–Jury Verdict" when referring to the state court's decision.

**6.** The Non–Jury Verdict that HFC appended to its Motion is dated June 27, 2007. The Foreclosure Action docket reflects the entry of that verdict on July 2, 2007.

**7.** Pursuant to Pa. R. Civ. P. 1038(b) and (c), the trial judge's decision may include "specific findings of fact and conclusions of law with appropriate discussion" and "may be made orally in open court at the end of the trial."

HFC appended a copy of the hearing transcript reflecting the state court's findings to its Motion without attaching an affidavit concerning the transcript's authenticity. Nonetheless, the Debtor has not disputed the authenticity and has referenced these very state court findings in both the AP Complaint and in her brief in opposition to HFC's Motion to Dismiss. Therefore, I may consider the state court's findings without converting HFC's Motion into a motion for summary judgment. *See generally Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993) (court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

HFC also appended other documents such as Ms. Funches' deposition in the Foreclosure Action, the HUD–1 Settlement Statement and 2007 documents from the Bucks County Recorder's Office to its Motion. While the Debtor did not object to HFC's use of these documents, I nonetheless did not consider them and they played no role in my determination of HFC's Motion.

payment despite receiving monthly payment vouchers for the loan.

17. Mr. Nolan [the title agent who handled the transaction] testified that he personally witnessed the execution of all appropriate documents, including the mortgage documents, during the transaction of November 10, 2004.

19. it is undisputed that the [Debtor] admits that she applied for and received the loan.

20. it is undisputed that the [Debtor] attended the loan.

21. it's undisputed that the [Debtor] received title to the property.

22. it's undisputed that the [Debtor] could not have afforded the property without the proceeds of the loan.

24. [the testimony of HFC's expert] is credible.

25. [HFC's expert] testified that the signatures on the [loan and mortgage documents] were all original signatures of the [Debtor], Erma Funches.

26. [the Court] accepts that testimony as credible and thereby finds that the signatures were originals.

28. [the Debtor] produced no evidence concerning forgery of the document[s] other than the testimony of [the Debtor] ..., which the Court does not find credible.

30. the Court finds that while in the process of asking various questions and pointing out perceived irregularities [regarding the loan], at no time [was, sic] the issue of forgery ever raised.

31. the [Debtor] admits entering into a consumer credit transaction, and in that transaction the lender took a security interest in a newly purchased principal residence.

32. the Court finds in favor of [HFC] and against [the Debtor], and will sign the appropriate order of mortgage foreclosure.

Foreclosure Action, June 26, 2007 Hearing Transcript, at 2–7 ("Foreclosure Findings").

The Non–Jury Verdict has not yet become a "judgment." Unlike the federal judicial system, where a judgment typically is entered immediately following the issuance of a decision resolving a case, *see* Fed.R.Civ.P. 58, in the Pennsylvania state court system, a judgment ordinarily is not entered until after post-trial motions have been decided or, where no post-trial motions have been filed, until after the 10–day time period for filing such motions has elapsed. *See* Pa. R. Civ. P. 227.4(1), 227.1. Here, the Debtor filed for chapter 13 bankruptcy relief before the time for filing post-trial motions had passed, which had the effect of preventing any valid judgment from being entered. *See* 11 U.S.C. § 362(a).[8]

### C. The AP Complaint and HFC's Motion to Dismiss

On July 27, 2007, shortly after commencing the main bankruptcy case, the Debtor instituted this AP by filing a Complaint against HFC ("the AP Complaint"). Through the AP, the Debtor seeks to avoid the HFC Mortgage.[9]

The AP Complaint states two (2) counts:

---

8. According to the dockets for the Foreclosure Action, judgment *was* entered on state court judge's decision on July 13, 2007, however, this was done in violation of the automatic stay. Generally, actions taken in violation of the automatic stay are void. *E.g., In re Myers*, 491 F.3d 120, 127 (3d Cir.2007).

9. If the Debtor were successful in avoiding the HFC Mortgage, the consequences would

1. Count I, which alleges that the Non-Jury Verdict is an avoidable preference pursuant to 11 U.S.C. § 547[10]; and

not be entirely to the Debtor's benefit. Avoidance of the mortgage would create equity in the Sellersville Property in excess of $500,000. It would also leave HFC with a general unsecured claim in excess of $500,000. The Debtor is entitled to exempt only $19,425.00 of the equity that would be created by avoidance of the HFC Mortgage. *See* 11 U.S.C. § 522(d)(1), (5). To confirm a chapter 13 plan, the Debtor is obliged to provide a distribution to unsecured creditors in the same amount that creditors would receive in a chapter 7 liquidation. *See* 11 U.S.C. § 1325(a)(4). In this case, after avoidance of the HFC Mortgage, liquidation of the Sellersville Property in a hypothetical chapter 7 case would generate a distribution of at least several hundred thousand dollars. Accordingly, the chapter 13 plan would have to provide for an equivalent distribution—requiring the Debtor to fund a plan totaling several hundred thousand dollars. The Debtor appears to lack the income level sufficient to make such payments over the sixty (60) month period permitted in chapter 13. *Compare id.* § 1322(d)(1) *with* § 1325(b)(4); *see also* Debtor's Schedules I & J (listing monthly take-home income of $8,833.00 and monthly expenses of $8,770.00) (Bky. No. 07–13883 Docket Entry Nos. 16, 17).

The end result is that the only way the Debtor can propose a confirmable chapter 13 plan is to sell the Sellersville Residence as part of the plan. Her counsel acknowledged as much at the hearing. *See* Hearing Transcript, Sept. 27, 2007 (hereinafter "N.T."), at 42–43. Apparently, the Debtor's goal in this case is to extract the value of her bankruptcy exemption (slightly under $20,000.00) from the property, rather than losing that value in a foreclosure sale.

10. Section 547(b) provides that:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property——
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

2. Count II, which alleges that the HFC Mortgage is avoidable pursuant to 11 U.S.C. § 544(a)[11] due to its defective notarization.

(3) made while the debtor was insolvent;
(4) made——
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if——
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11. Section 544(a) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by——
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, as such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

In the Complaint, the Debtor alleges that she purchased the Sellersville Property on November 10, 2004 and that the only documents she signed in the course of the settlement were a defective Settlement Statement and a contract regarding propane gas service. AP Complaint, ¶¶ 5,7. The Debtor contends that she did not execute a mortgage or note and continues to assert, as she did in the Foreclosure Action, that the HFC Mortgage and note "which purport to contain her signature are forgeries." AP Complaint, ¶ 7. The Debtor also continues to contend that the notary did not attend the settlement, which she asserts renders the HFC Mortgage invalid under state law and avoidable by the Trustee. AP Complaint, ¶¶ 8, 9.

The Debtor brought the AP Complaint in the Debtor's name and in the name of the Trustee. Indeed, paragraph 1 of the AP Complaint refers to the AP as "an action by the Debtor *and* the Trustee." *See* AP Complaint ¶ 1 (emphasis added). Nonetheless, with respect to the Trustee, the Debtor alleges that "*[i]t is not known whether the Trustee will consent to this action on his behalf and hence will attempt to avoid this transfer.*" AP Complaint ¶ 17 (emphasis added). The Debtor contends that if the Trustee does not desire to pursue the avoidance claims, the Debtor is entitled to do so independently pursuant to 11 U.S.C. §§ 522(h) and (g)(1). *See* AP Complaint, ¶ 18. In support of this contention, the Debtor states that she claims exemption rights in the Sellersville Property, that the entry of the Non–Jury

Verdict against her was not voluntary, that she did not conceal the Sellersville Property and that the avoidance rights she asserts in the AP would have been available to the Trustee. *Id.*

Notably, the documents filed in this case are devoid of formal proof of service of the AP Complaint on the Trustee in conformity with the rules of court.[12]

HFC responded to the AP Complaint by filing the Motion (presumably brought pursuant to Fed.R.Civ.P. 12(b)(6) and/or 12(b)(1), as incorporated by Fed. R. Bankr.P. 7012(b)), and a Motion for Sanctions pursuant to Rule 9011.[13]

A hearing was held on both motions on September 27, 2007, after which the parties submitted additional memoranda of law in support of their respective positions.

### III. THE PARTIES' ARGUMENTS

#### A. Initial Briefing

In its Memorandum of Law in support of its Motion, HFC argued that:

1. the *Rooker–Feldman* doctrine bars consideration of the Debtor's claims;

2. the Complaint should be dismissed under the *Younger* abstention doctrine;

3. the Non–Jury Verdict did not effect a "transfer" of an interest of the Debtor in property;

4. issue and claim preclusion principles bar the Debtor from re-litigating the

---

12. The Debtor filed a proof of service of the AP Complaint and Summons as to HFC, *see* AP Docket Entry No. 3, but did not do so with respect to the Trustee. The Trustee had notice of the filing of the AP Complaint because he received electronic notice of its filing. *See* Bky. No. 07–13883 (Docket Entry No. 10). However, that notice did not constitute service of the AP Complaint in the sense of "service of process." *Compare* Fed. R.

Bankr.P. 7004 (governing service of summons and complaint in adversary proceeding with *id.* 7005 (governing service of papers after service of the complaint in an adversary proceeding)).

13. This Opinion will address only the Motion. I will resolve the Motion for Sanctions in a separate order and/or memorandum.

defective notarization's effect on the validity of the HFC Mortgage; and

5. issue and claim preclusion principles bar the Debtor from re-litigating whether her signature on the HFC Mortgage was a forgery.

In her Memorandum in Opposition to HFC's Motion, the Debtor argued that:

1. the *Rooker–Feldman* and *Younger* abstention doctrines are inapplicable to avoidance and/or preference claims;

2. occurrences in the course of a mortgage foreclosure can effect an avoidable "transfer" of a debtor's property;

3. the Non–Jury Verdict was not sufficiently final to be accorded any preclusive effect; and

4. in any event, the avoidance action is not affected by principles of res judicata and collateral estoppel.

## B. The Hearing and Post–Hearing Briefing

### 1. identity of the "transfers" the Debtor seeks to avoid

At the hearing on HFC's Motion, the Debtor refined certain of her legal theories with respect to the "transfers" she seeking to avoid in each of the Counts of the AP Complaint.

Specifically, with respect to the § 544 avoidance claim in Count II, the Debtor no longer pressed the theory that the Non–Jury Verdict had effected a transfer of the Debtor's property. Instead, the Debtor asserted that she is entitled to avoid *the transfer giving rise to the HFC Mortgage itself*,[14] pursuant to *In re Fisher*, 320 B.R. 52 (E.D.Pa.2005) and *In re Rice*, 133 B.R. 722 (Bankr.E.D.Pa.1991), two federal court decision that apply Pennsylvania state law to determine the avoidability under 11 U.S.C. § 544 of an improperly notarized mortgage. *See* N.T. at 26, 40.[15]

**14.** During oral argument, the following colloquy took place between the court and the Debtor's counsel regarding the § 544 claim:

THE COURT: I want to understand what transaction, what transfer precisely you're seeking to avoid. The actual signing of the mortgage? Is your theory that the debtor did not acknowledge the mortgage ... in front of a notary, therefore it's a mortgage that can be avoided under the trustee's strong-arm powers?
MR. SCHOLL: Yes.
N.T. at 26; *see also* N.T. at 40.

**15.** In *Rice* and *Fisher*, federal courts applied Pennsylvania state law to determine the validity of an improperly notarized mortgage as to third party creditors and, therefore, the mortgage's avoidability under 11 U.S.C. § 544. In both cases the avoidance actions were instituted jointly by the respective debtors and trustees. In *Rice*, the bankruptcy court held that a mortgage that was improperly notarized—*i.e.*, that was notarized only *after* the settlement and out of the presence of the mortgagor—was invalid against certain third

parties under Pennsylvania law and therefore, could be avoided through use of the trustee's strong arm powers. The district court reached a similar conclusion in *In re Fisher*.

There is contrary authority. *See In re Bell*, 309 B.R. 139, 158–61 (Bankr.E.D.Pa.2004) (Pennsylvania law requires clear and convincing evidence of fraud or forgery with respect to the underlying mortgage documents to void the perfection of a recorded mortgage containing an acknowledgment that is complete and proper on its face and absent proof of fraud or forgery, a mortgage cannot be avoided under 11 U.S.C. § 544); *In re Armstrong*, 288 B.R. 404, 429–31 (Bankr.E.D.Pa.2003) (same); *In re Messinger*, 281 B.R. 568 (Bankr. M.D.Pa.2002) (same); see also *In re Jones*, 284 B.R. 92 (Bankr.E.D.Pa.2002) (same, but also finding that debtor's recollection whether notary was present was muddled and not sufficient to establish that notary did not attend loan closing), *aff'd*, 308 B.R. 223 (E.D.Pa., 2003) (debtor's muddled recollection regarding notary's presence at loan settlement was not sufficient to establish that notary was not present).

With respect to the Debtor's § 547 preference claim (and in contrast to the § 544 claim), at the hearing on the Motion, the Debtor continued to maintain that the *entry of the Non–Jury Verdict* effected a "transfer" of property resulting in an avoidable preference. See N.T. at 41.

In response to this theory, HFC argued that the entry of the Non–Jury Verdict did not transfer any property. HFC reasoned that, in light of the Foreclosure Findings, it had already been determined that HFC obtained a valid mortgage in the November 10, 2004 transaction and, therefore, the entry of the Non–Jury Verdict did not transfer any further property. In other words, HFC posited that it was the Debtor's grant of the HFC Mortgage that gave HFC the interest in the Sellersville Property and that the Non–Jury Verdict effected no further transfer because the HFC Mortgage was valid from the outset.

### 2. the Debtor's authority to exercise the trustee's avoidance powers and the effect of Pennsylvania's Curative Statute

Two additional issues were explored at the hearing on HFC's motions and/or in post-hearing briefing: (1) the Debtor's statutory authority for exercising the Trustee's avoidance powers under 11 U.S.C. §§ 544, 547[16] and (2) whether the Pennsylvania Curative Statute, 21 P.S. § 281.1, effectively quieted title and preserved the validity of HFC Mortgage as to third party avoidance claims under Pennsylvania law and 11 U.S.C. § 544, notwithstanding the alleged defects in the notarization of the mortgage.

---

**16.** Initially, the court raised this issue because it arose naturally from the Debtor's counsel's concession that he did not obtain the Trustee's consent prior to filing the AP Complaint, *see* N.T. at 29, 42, and the Trustee's lack of participation in the AP. In its post-hearing

## IV. STANDARDS OF REVIEW UNDER RULES 12(b)(1) and 12(b)(6)

As indicated earlier, HFC's Motion presumably was made pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Rule 12(b)(1) and Rule 12(b)(6) provide for the dismissal of causes of action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept all of the plaintiff's factual allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal is appropriate only if, accepting as true all facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In other words,

> the complaint must [first] describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic,* 127 S.Ct. at 1965, 1973 n. 14.

---

Memorandum, HFC argued that only the Trustee has the authority to assert the § 544 claim raised in the AP Complaint. HFC's Responsive Brief at 10–11 (AP Docket Entry No. 18).

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007); *accord, Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir.2007).

The court's role in scrutinizing a plaintiff's complaint for Rule 12(b)(6) dismissal purposes is limited. The focus of the court's inquiry is not on whether the plaintiff will ultimately prevail, but " 'whether the plaintiff is entitled to offer evidence in support of [her] claims.' " *Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc.*, 2007 WL 2713051, at *4 (M.D.Pa. Sept.14, 2007).

In assessing a Rule 12(b)(6) motion to dismiss, a court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record." *Unite Nat'l Ret. Fund*, 2007 WL 2713051, at *4 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994)). The court may also consider " 'undisputedly authentic' documents" where the plaintiff's claims are based on documents and the defendant has attached copies of the documents to the motion to dismiss. *Unite Nat'l Ret. Fund*, 2007 WL 2713051, at *4.

A motion to dismiss pursuant to Rule 12(b)(1), on the other hand, challenges the existence of subject matter jurisdiction over a claim. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005). When a mo-tion to dismiss challenges subject matter jurisdiction, the court must distinguish between "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir.1977). In ruling on 12(b)(1) motions to dismiss that attack the complaint on its face, as HFC's Motion does here,[17] "the court must consider the allegations of the complaint as true." *Id.; see also Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000).[18]

## V. DISCUSSION: JURISDICTIONAL ISSUES

Two of the arguments HFC raised in its Motion—namely, that the *Rooker–Feldman* and *Younger* abstention doctrines mandate the dismissal of the AP—implicate the propriety or advisability of this court exercising jurisdiction in this AP. Therefore, I will begin by addressing those arguments.

### A. The *Rooker–Feldman* Doctrine Does Not Bar Consideration of the Debtor's Claims

The *Rooker–Feldman* doctrine stems from the statutory proposition that federal district courts are courts of original, and not appellate, jurisdiction. *Exxon*

---

17. *See, e.g., In re Cooley*, 365 B.R. 464, 467 (Bankr.E.D.Pa.2007) (treating *Rooker–Feldman* challenge to subject matter jurisdiction as a "facial attack" to jurisdiction).

18. With respect to what the Third Circuit has labeled the "factual attack" to subject matter jurisdiction, the Court of Appeals has observed that:

The factual attack ... differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's ... very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. *Mortensen*, 549 F.2d at 891.

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284–85, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Only the United States Supreme Court has original jurisdiction to review final judgments from a state's highest court. 28 U.S.C. § 1257(a). The *Rooker–Feldman* doctrine is designed to prevent federal district courts from sitting as appellate courts with regard to state court judgments. As the Supreme Court explained in *Exxon Mobil*, the *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284, 125 S.Ct. 1517.

HFC asserts that the *Rooker–Feldman* doctrine deprives the court of subject matter jurisdiction over the claims the Debtor has asserted in this AP. I do not agree.

█ Application "of the *Rooker–Feldman* doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law." *In re Sasson*, 424 F.3d 864, 871 (9th Cir.2005). As such,

> [t]he *Rooker–Feldman* doctrine has little or no application to bankruptcy proceedings that invoke the substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case.

*Id.* Further, as the court stated in *In re Ehmke*, 2006 WL 1994904 at *5 (E.D.N.Y. July 14, 2006):

> *Rooker–Feldman* has never had much impact in bankruptcy cases. Congress' power under Article I of the Constitution to enact uniform bankruptcy laws such as the Bankruptcy Code necessarily means that state court judgments will be treated differently, with less or even no effect, then they would be treated in state court. This is not regarded as "second-guessing" the merits decided by the state court, which is all that *Rooker–Feldman* seeks to prevent. It is merely a necessary incident of enforcing the provisions on the Bankruptcy Code.

In *In re Knapper*, 407 F.3d 573, 583 n. 22 (3d Cir.2005), our Court of Appeals has been even more blunt on the subject:

> In apparent contradiction to *Rooker–Feldman* theory, **bankruptcy courts are empowered to avoid state judgments,** *see, e.g.,* 11 U.S.C. §§ 544, 547,- 548, 549; to modify them, *see, e.g.,* 11. U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328. . . . Thus, final judgments in state courts are not necessarily preclusive in United States bankruptcy courts. Indeed, the rule has long stood that a state court judgment entered in a case that falls within the federal court's exclusive jurisdiction is subject to collateral attack in the federal courts.[19]

**19.** Notably, the Third Circuit quoted from *In re Gruntz*, 202 F.3d 1074 (9th Cir.2000) (en banc) in the passage above and directed attention to *Gruntz* for a fuller discussion of the intersection between *Rooker–Feldman* and bankruptcy law. In *Gruntz*, the court further explained:

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress,

> because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.

*Id.* at 1079–80 (quoting *Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 84 L.Ed. 370 (1940)).

*Id,* (citations omitted) (emphasis added); *see also Sasson,* 424 F.3d at 871 ("[i]n the exercise of federal bankruptcy power, bankruptcy courts may avoid state court judgments in core bankruptcy proceedings, ... may modify judgments ... and may discharge them").

The *Rooker–Feldman* doctrine has no application to this AP because the Debtor is not seeking to have this court review the merits of the state court Non–Jury Verdict.[20] Rather, she is attempting to prevent the bankruptcy court from giving effect to that Verdict or, in bankruptcy terminology, attempting to have the Non–Jury Verdict "avoided." As the court noted in *In re Hopkins,* 346 B.R. 294, 302 (Bankr.E.D.N.Y.2006), "[t]he bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state-court judgments in appropriate circumstances." *See also In re Huie,* 2007 WL 2317152 (Bankr. E.D.Tex. Aug.8, 2007) (finding *Rooker–Feldman* doctrine did not bar § 522(f) claim to avoid state court judgment).

**B. The *Younger* Abstention Doctrine Is Inapplicable**

■ Next, HFC argues that abstention is warranted under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In *Younger,* the Supreme Court articulated "the fundamental policy against federal interference with state criminal prosecutions." 401 U.S. at 46, 91 S.Ct. at 751. There, the Court reversed an order of a three-judge district court enjoining a state prosecutor from proceeding further in an ongoing criminal prosecution. In subsequent decisions, the Supreme Court has extended *Younger* doctrine against federal interference with ongoing state court proceedings to certain types of state civil proceedings. *See* 17B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, *Federal Practice & Procedure: Civil 3d* § 4254 (West 2007) ("Wright & Miller").

■ In *Addiction Specialists, Inc. v. Township of Hampton,* 411 F.3d 399, 408 (3d Cir.2005), the Court of Appeals stated that *Younger* abstention is only appropriate where the following three requirements are satisfied:

1. there are ongoing state proceedings that are judicial in nature;

2. the state proceedings implicate important state interests; and

3. the state proceedings afford an adequate opportunity to raise the federal claims.

All three factors must be met for a federal court to properly rely upon *Younger* in abstaining from exercising jurisdiction. *Id.* In *Addiction Specialists,* the court also cautioned that abstention "rarely should be invoked" and is appropriate only in a few carefully circumscribed situations. *Id.* (citations omitted).

At minimum, factor 3 of the *Younger* abstention test is absent here. The ongoing state court proceeding (the mortgage foreclosure action) does not provide a forum for the § 544 claims at issue in the AP to be determined.

The § 544 avoidance claim in this AP is based on the contentions that the acknowledgment of the HFC Mortgage was defective and that the Debtor's signature on the mortgage and note were forgeries.

---

**20.** As observed in Part II.B., *supra,* the Non–Jury Verdict is something "short" of a state court judgment. For purposes of this discussion, I will assume, without deciding, that the Non–Jury Verdict is sufficiently similar to a judgment so as to implicate the *Rooker–Feldman* doctrine.

The primary beneficiary of the claim, if it is successful, will be the bankruptcy estate (*i.e.*, the Debtor's creditors) because the avoidance of the HFC Mortgage will augment the assets in the bankruptcy estate and increase the distribution to creditors. The assertion of this type of claim for the benefit of the Debtor's creditors cannot be raised in the ongoing state court proceeding. That proceeding is a two-party mortgage foreclosure action between the Debtor and HFC. There is no procedural vehicle in that action for the avoidance rights of third parties to be vindicated. For this reason alone, *Younger* abstention is inapplicable. *See In re PRS Ins. Group, Inc.*, 331 B.R. 580, 589 (Bankr.D.Del.2005) *(Younger* abstention did not apply to cause bankruptcy court to decline to exercise jurisdiction over trustee's defenses to debtor's proof of claim; no proceeding existed elsewhere to deal with trustee's defenses); *see also Addiction Specialists*, 411 F.3d at 413:[21]

> *Younger* abstention is only appropriate where the precise claims raised in federal court *are available* in the ongoing state proceedings. Where the availability of a claim in state court is questionable, our abstention jurispru-

dence weights in favor of retaining jurisdiction.

Accordingly, I find HFC's argument that the *Younger* abstention doctrine mandates the dismissal of this AP unpersuasive.

## VI. THE DEBTOR IS NOT A PARTY WHO CAN ASSERT THIS § 544 AVOIDANCE CLAIM

HFC also raised another threshold issue—whether the Debtor has the authority to maintain this AP.[22] In response, the Debtor asserts that she possesses the ability to maintain this action: (1) together with the involuntarily-named Trustee and/or (2) independently pursuant to sections 522(g)(1) and (h) of the Bankruptcy Code.

Because the § 544 claim and the § 547 claim seek to avoid different transfers, it is necessary to evaluate each claim separately in considering this argument. I start with the § 544 claim.

As explained below, I conclude that the Debtor may not maintain the § 544 claim either by including the Trustee as a party plaintiff or in her capacity as a chapter 13 debtor.

---

**21.** I note also that, with respect to factor 2, at least one court has held that state foreclosure actions are "purely private" and do not implicate important state interests such as to warrant abstention under the *Younger* abstention doctrine. *See Rowland v. Novus Financial Corp.*, 949 F.Supp. 1447, 1456 (D.Hawai'i 1996).

Finally, with respect to factor 1's requirement of ongoing state proceedings, I note that the Foreclosure Action has been stayed by the filing of the Debtor's bankruptcy petition and all that remains is the filing of post-trial motions and/or appeals. The litigation of the avoidance action in this court would not offend notions of comity with respect to the Foreclosure Action. Here, that means that a successful avoidance action would set aside, under federal law, a mortgage the state court

found valid. That result does not interfere with the prerogatives of the state court system but merely superimposes federal law on the result of the state court proceeding.

**22.** Some courts have reasoned that the issue of whether a debtor has the authority to maintain an avoidance action is one of standing that implicates the court's subject matter jurisdiction over an adversary proceeding. *E.g., In re Cohen*, 305 B.R. 886, 901 (9th Cir. BAP 2004) ("We must resolve the jurisdictional question of chapter 13 debtor standing to exercise trustee avoiding powers"). I find it unnecessary decide whether or not the issue is one of "standing," "real party in interest," "failure to state a cause of action," or some related doctrine.

### A. The Debtor May Not Maintain This Action Jointly with the Trustee

#### 1. The Trustee is not a voluntary joint plaintiff.

In this AP, the Trustee has neither initiated the action in his own right nor authorized the Debtor to bring it on his behalf. True, the caption of the AP Complaint is styled as an action brought by the Debtor and the Trustee. However, the Trustee has not participated in this AP individually. Nor has he made a separate appearance through counsel. Further, the Debtor's counsel acknowledged that he did not ask the Trustee for his permission prior to naming him in the caption of the Complaint. *See* N.T., at 29, 42. The AP Complaint itself alleges an uncertainty that the Trustee will consent to this action. *See* AP Complaint, ¶ 17.

Accordingly, I conclude that the Trustee is not a voluntary party in the AP. It follows that, at best, his role in this case is necessarily that of an involuntarily-named party.

#### 2. The Trustee has not been effectively joined as an involuntary plaintiff under Fed. R. Bankr.P. 7019

#### a. the standards for involuntary joinder under Rule 19 have not been met

■ Because the Trustee has not voluntarily joined this action as a party, the next question is whether the Debtor may maintain this action pursuant to the theory that the Trustee has been properly joined as an additional, albeit involuntary, plaintiff. To resolve this question, I must examine Fed.R.Civ.P. 19, made applicable to this AP through Fed. R. Bankr.P. 7019, because it governs compulsory joinder and makes some provision for joining a party an involuntary plaintiff.

Rule 19 provides in pertinent part:

**(a) Persons Required to be Joined if Feasible.**

**(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:

(I) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2) Joinder by Court Order.** If a person has not been joined as required, the court must order that person be made a party. A person who refuses to join as a plaintiff may be made either a defendant, or in a proper case, an involuntary plaintiff.[23]

---

**23.** The text quoted above is the current version of the rule, as amended effective December 1, 2007. The language of Rule 19 was amended "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." *See* Advisory Committee Note, 2007 Amendment to Fed.R.Civ.P. 19. If the changes in Rule 19 had been substantive, I would have had to determine which version of the rule should be applied to a motion pending on the effective date of the change. Because the amendment was intended to be stylistic only, it is unneces-

Putting aside the Rule 19 requirement that the Trustee's absence from this litigation preclude complete relief from being awarded to the other parties, other significant obstacles block the Debtor's path to using Rule 19 as a vehicle for joining the Trustee in the AP.

█ Rule 19(a)(2) states that if a person "refuses to join as a plaintiff that person may be made ... in a proper case, an involuntary plaintiff." An "involuntary plaintiff" is "a party who is obligated to assist in prosecuting an action or to permit its name to be used but refuses to do so and who is thereafter joined, without service, and bound by any judgment the Court may enter as to it." *International Rediscount Corp. v. Hartford Acc. & Indemn. Co.*, 425 F.Supp. 669, 674 (D.Del. 1977); *see also Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1927) (cited in Advisory Committee Note, Fed. R.Civ.P. 19).

█ Rule 19 limits the use of the involuntary plaintiff procedure to a "proper case." Under the case law, a "proper case" requires:

1. an absentee party that "has an obligation to permit its name and title to be used to protect the rights asserted in the action";

2. that the absentee party is beyond the jurisdiction of the court; and

3. that the absentee party has been asked to join the suit but has refused to do so voluntarily.

*International Rediscount Corp.*, 425 F.Supp. at 674; *see also South Dakota ex rel. South Dakota R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F.Supp.2d 919, 935 (D.S.D.2003); *Dublin Water Co. v. Delaware River Basin Comm'n*, 443 F.Supp. 310, 315 (E.D.Pa.1977); *In re Interstate Motor Freight Sys. IMFS, Inc.*, 71 B.R. 741, 746 (Bankr.W.D.Mich.1987); 7 Wright & Miller § 1606.

This AP is *not* a "proper case" within the meaning of Rule 19.

First, the text of the rule, as well as the case law describing the elements of a "proper case," both require that the party to be joined refuse to do so. The Trustee has not refused to join this adversary. He was never even asked to join the litigation as a party plaintiff.

Second, the Trustee is not beyond the Court's jurisdiction.[24]

---

sary to do so and, in this Opinion, I will refer the new version of rule.

**24.** This requirement is grounded in Rule 19's text. *See also* 7 Wright & Miller § 1606 (footnotes omitted):

A party may be made an involuntary plaintiff only if the person is beyond the jurisdiction of the court, and is notified of the action, but refuses to join.... [I]f the absentee is within the jurisdiction, the absentee must be served with process and made a defendant. These limitations are necessary because the involuntary-plaintiff procedure allows a person to be made a party to the action without service of process and permits the court to enter a judgment that has preclusive effect as to the involuntary plaintiff. There is no justification for resorting

to it when the party actually is subject to the jurisdiction of the court.

I also note that nothing in the record shows that the Debtor actually effected service of process on the Trustee in compliance with Fed.R.Civ.P. 4 (applicable in this AP through its incorporation in Fed. R. Bankr.P. 7004). *See* n. 12, *supra*. Valid service of process is a prerequisite to a court's exercise of personal jurisdiction over a party. *See generally* 7 Wright & Miller § 1610 (relating to personal jurisdiction issues regarding compulsory joinder) & § 1606 ("if the absentee [plaintiff] is within the jurisdiction, the absentee must be served with process ..."); *see also International Rediscount Corp.*, 425 F.Supp. at 674 ("If a party is subject to service, however, it is not joined as an 'involuntary plaintiff.' Rather, it is served, joined as a defendant, and

Third, the Trustee has no duty to permit the Debtor to prosecute this avoidance action in his name. As the court observed in *Novak v. Active Window Productions, Inc.*, 2007 WL 749810 (E.D.N.Y. Mar.7, 2007), the duty to participate in a suit or to permit another to bring the suit in one's name has generally been found to arise in two types of cases: "(1) where an owner grants an exclusive license to a licensee and permits the licensee to sue in his name, or (2) where an obligation arises by contract among co-owners." *Id.* at *3.

There is nothing in the relationship between a bankruptcy debtor and a case trustee that even remotely resembles a contractual relationship justifying the initiation of a lawsuit by one party in the name of the other party.[25] Because the Trustee has no duty to permit the Debtor to exercise his avoidance powers in his name, the Debtor may not maintain this action in the name of the Trustee by invoking Rule 19. *See generally In re Frymire*, 1988 WL 100987, at *1 (Bankr.E.D.Pa. Sept.27, 1988) (declining to permit the debtor to obtain an extended statute of limitations—by "the mere procedural device of adding the Trustee as a nominal, involuntary plaintiff"); *In re Interstate Motor Freight Sys. IMFS, Inc.*, 71 B.R. 741, 746–47

(Bankr.W.D.Mich.1987) (employee benefit funds lacked standing to bring § 506(c) action and could not cure lack of standing by joining trustee as involuntary plaintiff).[26]

### b. the cases the Debtor relies upon to justify naming the Trustee as an involuntary plaintiff are inapposite

Finally, to justify naming the Trustee as a plaintiff in this AP, the Debtor's counsel relies heavily on *Fisher* and *Rice*—the two federal cases described briefly in n. 15, *supra*, that concern a debtor's ability to avoid a mortgage that has been improperly notarized. I have considered those opinions and find that they do not alter my conclusion that the Trustee has not been joined validly in this adversary proceeding.

From the discussion provided in the "supplemental history" section of the *Rice* opinion, it appears that the debtor in *Rice* brought the avoidance action in the trustee's name alone. The court stated:

> The Debtor appears to have slightly misunderstood the nature of §§ 522(h) and 522(g)(1). These Code sections permit *her* to avoid certain transfers if the Trustee does not attempt to do so.

---

then realigned by the Court in the 'character which (it) should assume'.").

The absence of personal jurisdiction due to lack of service by itself might require dismissal of the AP Complaint if the participation of the Trustee as a party plaintiff is essential. However, it is likely that the Debtor would be able to cure this particular jurisdictional defect by effecting service. Therefore, I consider in the text other reasons, less amenable to cure, why the Debtor may not invoke Rule 19.

**25.** If anything, the Debtor's procedural sleight of hand in naming the Trustee as a party plaintiff to compel the Trustee to prosecute an avoidance action may constitute an improper invasion of the powers of the Trustee. The respective roles of a debtor and trustee to

employ the Code's avoidance powers is further discussed below in Part VI.

**26.** This case does not present the issue frequently referred to as "derivative standing," *i.e.*, whether, after a chapter 13 trustee has declined to initiate an avoidance proceeding, a chapter 13 debtor who cannot exercise the trustee's avoidance powers independently through § 522(g)(1) and (h) may obtain court approval and exercise derivative standing to bring the avoidance proceeding. *See generally In re Official Committee of Unsecured Creditors of Cybergenics Corp.*, 330 F.3d 548, 553 (3d Cir.2003) (bankruptcy court has equitable power to authorize a creditors' committee to exercise avoidance powers of a chapter 11 debtor).

However, she has named only the Trustee, who has already expressed that he has no interest in the transaction ... as the plaintiff in this proceeding rather than herself.

*Rice,* 133 B.R. at 724. The court then observed that the trustee's apparent lack of interest "could have presented an issue." *Rice,* 133 B.R. at 724. However, because the debtor's ability to bring the avoidance action on the trustee's behalf, standing in the trustee's shoes, had not been questioned by the defendant, the court chose to treat the issue as having been waived. By comparison, here, the issue *has* been raised in the preliminary phase of the litigation.

Turning to *Fisher,* according to the reported opinion, the case is described as having been brought jointly—the court describes the case as involving "a debtor's and the bankruptcy trustee's ... attempt to avoid foreclosure on a parcel of real property." *Fisher,* 320 B.R. at 56. Thus, regardless whether the debtor was a proper party, it appears that the *Fisher* trustee took affirmative action to assert his statutory avoidance powers.

In any event, in neither *Fisher* nor *Rice* is there any suggestion that the issue of the debtor's ability to involuntarily name the trustee as plaintiff so as to take advantage of the trustee's strong arm powers was raised by the parties or reached by the court. Accordingly, I find that neither case persuades me that the Debtor's position has any merit.

### B. The Debtor Lacks Statutory Authority to Maintain the § 544 Avoidance Action

#### 1. the elements of the statutory scheme authorizing a debtor to invoke the trustee's avoidance powers: 11 U.S.C. § 522(g)(1) and (h)

Having determined that Rule 19 does not authorize the Debtor to join the Trustee as an involuntary plaintiff, the next question is whether the Bankruptcy Code provides any other authority for the Debtor to invoke the trustee's avoidance powers. To answer this question, it is helpful to take a step back and examine the respective roles that a bankruptcy debtor and a trustee play in chapter 13 cases, particularly in connection with assets that may constitute "property of the estate."

▮▮▮▮ The starting point in this system is the distinction between property of the bankruptcy estate that is "non-exempt" and estate property that a bankruptcy debtor has the right to claim as "exempt." Upon the commencement of a bankruptcy case, most of the bankruptcy debtor's property interests become bankruptcy estate property, *see* 11 U.S.C. §§ 541(a), 1306, and, as such, are available for payment of creditors' claims.[27] Such property is frequently referred to as being "non-exempt." However, the Bankruptcy Code provides a mechanism for individual bankruptcy debtors to protect or "exempt" certain property from property of the bankruptcy estate (and, therefore, from their creditors). *See* 11 U.S.C.

---

**27.** In a chapter 7 case, a debtor's "non-exempt" property is subject to liquidation and distribution to the debtor's creditors by the chapter 7 trustee. In a chapter 13 case, a debtor must propose to pay the value of his or her non-exempt property to unsecured creditors (*i.e.,* the "nonexempt" property that would be subject to liquidation in a chapter 7 case), to satisfy one of the legal standards entitling the debtor to confirmation of a chapter 13 plan. *See* 11 U.S.C. § 1325(a)(4). To accomplish the analytic purposes of this discussion, I will limit myself to principles relating to chapter 7 and chapter 13 cases of individual debtors.

§ 522(b)(1). The purpose of the Bankruptcy Code's exemption provisions is to foster the historic "fresh start" goals embedded in modern bankruptcy policy by permitting a debtor to maintain assets sufficient for the basic necessities of life. *See, e.g., In re Clark*, 711 F.2d 21, 23 (3d Cir.1983) (citing H.R.Rep. No. 595, 95th Cong, 1st. Sess. 126 (1977) *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6087). The consequence of the assertion of valid exemption is that an individual debtor's exempt property is not liquidated in a chapter 7 case and is *not* included in the calculation of the amount unsecured creditors are entitled to receive in distribution in a chapter 13 case under 11 U.S.C. § 1325(a)(4).

■ Typically, a prepetition "transfer" [28] of property (however accomplished and whether the debtor transferred his or her entire interest in the property or only a fractional part thereof) extinguishes the debtor's ability to claim an exemption in the transferred property interest. This is because once transferred prepetition, the debtor's interest in the property will not be property of the estate upon the filing of the bankruptcy case,[29] the result being that there is nothing in the estate for the debtor to exempt.

Sections 522(g) and (h) of the Bankruptcy Code promote the goals of the statutory exemption provisions by providing the debtor with a means—subject to certain limitations—of (1) exempting prepetition transfers of property that the trustee recovers and brings into the bankruptcy estate or (2) independently exercising Code remedies for recovery of property that was transferred prepetition and then exempting the recovered property. *See 4 Collier on Bankruptcy* ¶ 522.12, at 97–102 (15th rev. ed.2006).

■ Section 522(g)[30] enhances the debtor's exemption rights by empowering the debtor to exempt property that a trustee recovers through exercise of, *inter alia*, the trustee's avoidance powers. *See In re Flitter*, 181 B.R. 938 (Bankr.D.Minn. 1995). Significantly, the debtor's right to exempt property the trustee recovers is

---

**28.** Section 101(54) of the Code defines the term "transfer" to mean:
 (A) the creation of a lien;
 (B) the retention of title as a security interest;
 (C) the foreclosure of the debtor's equity of redemption; or
 (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with—
 (I) property; or
 (ii) an interest in property.
The Code does not define the term "an interest of the debtor in property." Generally, state law determines what interest, if any, a debtor has in property. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir.2000).

**29.** *See* 11 U.S.C. § 541(a)(1) (defining property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case").

**30.** Section 522(g)(1) provides:
 (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2) [relating to subordination of liens], 542 [relating to turnover of property to the estate], 543 [relating to turnover of property by a custodian], 550 [relating to liability for avoided transfers], 551 [relating to preservation of avoided transfers] or 553 [relating to setoff] of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if __
 (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
 (B) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

subject to two (2) conditions, that: (1) the transfer of property was *involuntary* and (2) the debtor *did not conceal* the property involved.

Section 522(h) provides the debtor with the second tool mentioned above—the power to use the trustee's transfer avoidance powers to recover property that may be exempted.[31] The debtor may invoke these avoidance powers, which are "ordinarily reserved to the bankruptcy trustee," if the trustee fails to do so *and* the property in question could have been claimed as exempt. *In re Myers*, 262 B.R. 445, 447 (Bankr.N.D.Ind.2001). In this AP, for example, the Debtor seeks to avoid her obligation to HFC on the Sellersville Property by utilizing the Trustee's strong arm powers in 11 U.S.C. § 544(b)(1). Section 544(b)(1) would enable the Trustee (into whose shoes the Debtor seeks to step) to avoid the HFC Mortgage if that obligation would not have bound a bona fide purchaser at the time the Debtor filed her claim for relief under chapter 13. *See, e.g., In re Fisher*, 320 B.R. at 62.

The last part of the statutory structure has the most relevance for present purposes. Section 522(h), the source of the debtor's right to use the trustee's avoidance powers, also imposes two (2) limitations. It refers back to subsection (g)(1), thereby prohibiting the debtor from invoking the trustee's avoidance powers to avoid transfers that were *voluntary* or to recover property that the debtor *concealed*. The policy reasons why Congress would limit a debtor's right to exercise a trustee's avoidance powers in this manner are self-evident.

Where all of the statutory prerequisites under § 522(g)(1) and (h) have been satisfied,[32] a debtor may use the trustee's avoiding powers for his or her own benefit. As explained below, I conclude that these statutory prerequisites have *not* been met in this case.

### 2. the § 522(h) requirement that the trustee has not attempted to avoid the transfer

In evaluating whether the conditions have been satisfied for the Debtor to invoke the Trustee's avoidance powers under § 522(h), I observe at the outset that there is an inherent logical inconsistency in the Debtor's position. That is, while the Debtor has asserted an ability to bring this

---

**31.** Section 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee has avoided such transfer, if ___

(1) such transfer is avoidable by the trustee under section 544 [relating to the trustee's authority to avoid certain transfers as a lien creditor or successor to certain creditors and purchasers], 545 [relating to the trustee's authority to avoid statutory liens], 547 [relating to preferences], 548 [relating to fraudulent transfers], 549 [relating to postpetition transactions] or 724(a) [relating to avoidance of certain liens] of this title or recoverable by the trustee under section 553 [relating to setoffs] of this title; and

(2) the trustee does not attempt to avoid such transfer.

**32.** Some courts have described § 522(h) as being composed of five (5) elements: (1) the transfer was not a voluntary transfer of property by the debtor; (2) the debtor did not conceal the property; (3) the trustee did not attempt to avoid the transfer; (4) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under § 522(g); and (5) the debtor seeks to exercise one of the trustee's avoidance powers enumerated in § 522(h). *See Matter of Hamilton*, 125 F.3d 292, 297 (5th Cir.1997); *In re DeMarah*, 62 F.3d 1248, 1250 (9th Cir.1995); *In re Steck*, 298 B.R. 244, 248–249 (Bankr. D.N.J.2003).

avoidance action in her capacity as a bankruptcy debtor—which, under section 522(h) she may do *only* if the trustee fails to bring such an action—at the same time, she purports to bring this avoidance action on her own behalf *and* on behalf of the Standing Chapter 13 Trustee.

I will not dwell on this apparent inconsistency, however, because I have already determined that (1) the Trustee is not a voluntary plaintiff in this AP and (2) the Trustee has been named properly as an involuntary plaintiff. This suggests that the Trustee has not attempted to avoid the transfer. Because, however, as explained below, the AP Complaint is deficient on other grounds, I need not base my ruling on a determination whether this requirement of § 522(h) has been satisfied in the circumstances presented here.

### 3. the Debtor's factual allegation regarding the alleged involuntariness of the mortgage transaction renders the Debtor's § 544 claim legally deficient

 The Bankruptcy Code does not define the term "voluntary". Bankruptcy courts have generally concluded, however,

that an *involuntary* transfer "occurs when . . . property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment." *Berman v. Forti,* 232 B.R. 653, 656 (D.Md. 1999) (citations omitted), *aff'd,* 203 F.3d 820 (4th Cir.2000); *see also In re Smith,* 333 B.R. 739, 745 (Bankr.D.Md.2005); *In re White,* 258 B.R. 129, 132 (Bankr.D.N.J. 2001). Additionally, a "transfer is also involuntary if it resulted from 'fraud, material misrepresentation or coercion.'" *Berman,* 232 B.R. at 656. (citations omitted).[33]

Scrutinizing the AP Complaint for allegations regarding voluntariness, I find that the Debtor has alleged that the entry of the Non–Jury Verdict in HFC's favor was not voluntary. AP Complaint, ¶ 17. However, this contention does not assist the Debtor with respect to the § 544 claim because the transfer that is the subject of that claim is the grant of the HFC Mortgage, not the Non–Jury Verdict.

With one possible exception, the AP Complaint contains no allegation that the Debtor's grant of the HFC Mortgage itself was involuntary.[34] That exception is the

---

**33.** *Accord In re Ross,* 1997 WL 331830, at *3 (Bankr.E.D.Pa. June 10, 1997) (quotations and citations omitted) (per Sigmund, J.):

> [A voluntary transfer occurs] when a debtor, with knowledge of all essential facts and free from the persuasive influence of another, chooses of her own free will to transfer property to the creditor. A voluntary transfer does not occur where a creditor has harassed, insulted, and shamed a debtor into transferring the property to a creditor. Nor has a voluntary transfer occurred where a creditor has concealed or failed to inform a debtor of the essential facts necessary for the debtor to make an intelligent decision on whether to transfer the property to the creditor. This is especially true where a debtor can show that she would not have made the transfer had she been informed of all the essential facts.

**34.** At the hearing on HFC's Motion to Dismiss, the Debtor pressed her argument that the notary who signed the HFC Mortgage documents was not present at the settlement. See N.T. at 29–30. If *Rice* and *Fisher,* see n. 15, *supra,* were correctly decided, this technical defect may have legal consequences in some circumstances, i.e., giving rise to a right of third parties to "take free and clear" of the mortgage. However, the allegation that the notary was not present at the settlement does not amount to an allegation that the Debtor's conveyance of an interest in the Sellersville Property was "involuntary" within the meaning of 11 U.S.C. § 522(g). The fact that the mortgage was notarized outside the presence of the Debtor, by itself, does not suggest that the Debtor's execution of the mortgage documents was not the product of her own free will. See *In re Terry,* 56 B.R. 538 (Bankr. D.Vt.1986).

Debtor's allegation that her signatures on the HFC Mortgage and Note are forgeries. AP Complaint, ¶ 7. It is not difficult to conceptualize how a forged signature on a mortgage purporting to effect a transfer of a debtor's interest in real property is not the product of a debtor's volition and therefore, is involuntary.

HFC has argued that the Debtor is precluded by the doctrine of collateral estoppel from reasserting her claims of forgery in this AP. I need not determine whether HFC is correct and whether Pennsylvania would accord preclusive effect to state court findings that have not yet ripened into a judgment at the trial court level,[35] however. That is because even assuming that (1) the Debtor is *not* collaterally estopped from pressing her forgery claim and (2) that the Debtor's allegation that the HFC Mortgage documents were forged is the equivalent of alleging that the transaction was "involuntary" for purposes of § 522(g)(1), the Debtor still faces an insurmountable obstacle to the maintenance of this AP.

The Debtor's problem is that the logical outcome of her contention that the mortgage documents were forged is that there was no "transfer" of property to avoid. Under Pennsylvania law, a purported transfer based on a forgery does not pass title.[36] It would make no sense to seek to use § 544 to avoid a transfer of property that did not occur.

Indeed, the facts assumed above would be similar to those in *In re Myers,* 262 B.R. 445 (Bankr.N.D.Ind.2001). In *Myers,* a chapter 7 debtor and his wife brought an adversary proceeding seeking to use the trustee's strong arm powers under § 544(a)(3) to have a bankruptcy court declare a mortgage on their property invalid. The debtor and his wife contended that the wife's signature on the mortgage was a forgery. *Id.* at 447. The court reasoned:

> Both parties have built their arguments upon an erroneous assumption. The Plaintiffs, by seeking to use § 522(h) to avoid the "transfer" represented by the forged mortgage, and the Defendant, by arguing that as to the debtor the "transfer" was voluntary, are working from the proposition that a forged mortgage has some type of validity. This assumption is wrong. A forged mortgage–be it a deed or a mortgage–conveys nothing: It is a nullity. Consequently, a forged mortgage is invalid ... and does not transfer any interest in property....
>
> Once we realize that a forged mortgage does not transfer any kind of an interest

---

**35.** *See Dougherty v. Lehigh Coal & Navigation Co.,* 202 Pa. 635, 52 A. 18 (1902) (jury verdict is not accorded preclusive effect because it is not equivalent of a final "judgment" for collateral estoppel purposes); *MIIX Insur. Co. v. Epstein,* 937 A.2d 469, 473–74 (Pa.Super.Ct.2007) (trial court's refusal to apply the doctrine of collateral estoppel to a jury verdict that had not been reduced to a judgment affirmed, in part, because the doctrine requires that there first be a final "judgment" on the merits); 50 C.J.S. Judgments § 789 (2007) (stating the proposition that, subject to some exceptions, a verdict or finding is not conclusive on the parties in a subsequent suit unless a judgment is entered thereon because "the force of the estoppel of a judgment is in the judgment itself"). *But see In re Belmonte,* 240 B.R. 843 (Bankr.E.D.Pa.1999) (per Raslavich, J.) (bench verdict is sufficiently firm to be accorded preclusive effect under Pennsylvania law even before it matured into a trial court judgment), *rev'd,* 279 B.R. 812 (E.D.Pa.2001) (bench verdict is too procedurally indefinite to be accorded preclusive effect).

**36.** *See Harris v. Harris,* 428 Pa. 473, 239 A.2d 783, 784–85 (1968); *Smith v. Markland,* 223 Pa. 605, 72 A. 1047, 1055–56 (1909); *Flitcraft v. Commonwealth Title Ins. & Trust Co.,* 211 Pa. 114, 60 A. 557 (1905); *Reck v. Clapp,* 98 Pa. 581, 1881 WL 14613, at *4 (Pa. Oct. 17, 1881); *see also Bennerson v. Small,* 842 F.2d 710, 714 (3d Cir.1988).

in property, it becomes clear that Plaintiffs' reliance upon the trustee's avoiding powers is misplaced. There is a significant difference between avoiding a transfer and declaring that no transfer has ever occurred. The first seeks to reverse the flow of events and return the parties to the position they previously occupied. The second says that nothing has ever happened. In challenging the validity of the Defendant's mortgage, Plaintiffs are really asking the court to determine whether a transfer ever occurred, not to undo one. Such a determination is not within the scope of § 522(h).

. . . .

Section 522(h) only allows a debtor to prosecute actions designed to avoid a transfer of property. It does not authorize suits seeking declaratory relief. The present action seeks only declaratory relief—that Defendant's mortgage is an invalid forgery-and not the avoidance of any transfer to the Defendant. Accordingly, it is not based upon and states no claim under § 522(h).

*In re Myers,* 262 B.R. at 448–449 (citations omitted).

Here, as in *Myers,* state law provides that forged transfer documents do not pass title. See n. 36, *supra.* If there was no "transfer of property," there is no transfer avoidance claim under § 544. Absent proof of forgery, no plausible argument has been pled that the transaction was involuntary. If there was a forgery, there is no transfer to avoid.[37] Either way, the Debtor's position is untenable.

While it is unlikely that the Debtor could plead other facts that would satisfy the preconditions found in § 522(g)(1) and (h) necessary for her to assert a § 544 claim, I will give the Debtor a brief period of time to file an amended complaint. This is because I cannot completely rule out the possibility that such other facts exist. *See, e.g. Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004) ("[w]e have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). If the Debtor fails to file an amended complaint, the dismissal of the § 544 claim will be with prejudice. With respect to the Trustee, the dismissal of the claim will be without prejudice.

4. **the Debtor may not invoke the Trustee's avoidance powers without satisfying the requirements of 11 U.S.C. § 522(g)(1) and (h)**

 There is one last issue relating to the Debtor's authority to assert the § 544 claim.

I am aware of a line of decisions in which courts have held that a chapter 13 debtor has an independent right to exercise the trustee's avoidance powers without regard to 11 U.S.C. § 522(g)(1) and (h).[38]

---

**37.** Proof of forgery, and the concomitant absence of a valid transfer of the Debtor's interest, would provide a basis for a direct attack on HFC's secured claim through an objection to HFC's claim, as opposed to the current attempt to avoid HFC's secured interest in the Sellersville Property. Undoubtedly, such a challenge would lead back to HFC's contention that the Non–Jury Verdict should preclude further litigation of the forgery issue.

To date, no such objection has been filed by any party and I reiterate that I do not reach the collateral estoppel issue. *See* n. 35, *supra* & accompanying text.

**38.** Although the Debtor did not specifically argue that she may bring this avoidance action without regard to § 522(g)(1) and (h), the argument is only a modest variant on the articulated arguments made in support of the

The most thorough analysis is found in *In re Cohen*, 305 B.R. 886, 895–90 (9th Cir. BAP 2004). In *Cohen*, the court employed a "holistic" approach to construction of the Code and, after considering the interrelationship of a number of Code provisions (including §§ 1302(b)(1), 1303, 1306(b), 541(a)(3), 1321, 1322(b)(8), 1325(a)(4)), concluded that a chapter 13 debtor concurrently holds the avoidance powers of the chapter 13 trustee. *See* 305 B.R. at 895–900.

If I were to follow this line of cases, the "involuntariness" requirement of § 522(g)(1) and (h) and the forgery issue would be immaterial. However, there is contrary authority. For example, in *In re Ryker*, 315 B.R. 664, 668 (Bankr.D.N.J. 2004) the bankruptcy court reasoned that:

> The statutory construction found by *Cohen* ... is plausible, but it is ultimately not persuasive because it gives no consideration to the plain language of the statute. Moreover, a reading of the statute in which only the Chapter 13 trustee has standing to prosecute avoidance actions is not inconsistent with the other rights and responsibilities of a Chapter 13 debtor, and is no real impediment to proposing or performing a Chapter 13 plan.

After reviewing the competing lines of precedent, I agree with and will follow *Ryker*. I find the Code to be clear and unambiguous on the subject of a debtor's authority to exercise the trustee's avoidance powers and conclude that implying additional rights to chapter 13 debtors does violence to the balance of rights among debtors, trustees and creditors that has been carefully constructed in the statute. *See also* 11 U.S.C. § 103(a) (except

as provided in § 1161, chapter 5 of the Code applies in cases under chapter 13).

Therefore, I hold that the Debtor may not maintain her avoidance actions in her capacity as a chapter 13 debtor without satisfying the requirements of 11 U.S.C. § 522(g)(1) and (h). Because she cannot do so, the § 544 claim must be dismissed.

## VII. ASSUMING *ARGUENDO* THAT THE DEBTOR MAY ASSERT THE § 547 CLAIM, HER CLAIM IS LEGALLY DEFICIENT

■ In support of her § 547 claim, the Debtor alleged that the entry of the Non–Jury Verdict was a transfer of an interest in her property and, because she contested the Foreclosure Action that resulted in the Verdict, that transfer of property was involuntary. Accepting the Debtor's premise that the entry of the Non–Jury Verdict was involuntary (a premise that is intuitive), I nevertheless find that Count I does not state a valid claim. I fail to see how the Non–Jury Verdict effected a further "transfer" of the Debtor's property interests beyond that already transferred by the grant of the mortgage.

Mortgages have a dual nature under Pennsylvania law. There are cases that recognize that a mortgage acts as a conveyance of property or title between the mortgagor and mortgagee ("the title theory") and others that acknowledge that a mortgage acts a lien between the mortgagor and mortgagee and third parties ("the lien theory"). *See generally Pines v. Farrell*, 577 Pa. 564, 848 A.2d 94 (2004) (examining state and federal cases applying Pennsylvania law and the seeming vitality of both theories in Pennsylvania).[39] Nota-

Debtor's position that she is entitled to invoke the Trustee's avoidance powers. Therefore, I consider it appropriate to consider the merits of the issue.

39. *See generally Sovereign Bank v. Schwab*, 414 F.3d 450, 453 n. 5 (3d Cir.2005) ("Pennsylvania follows the title theory whereby the mortgage is considered a conveyance in fee

bly, application of either the title or lien theory in this AP would result in a finding that the *mortgage transaction itself* was a "transfer of an interest of the debtor in property." *See* 11 U.S.C. § 101(54) (defining a "transfer" to include "the creation of a lien"). The question, then, is given the transfer effected by the Debtor's grant of the mortgage, was there any further "transfer" effected by the entry of the Non–Jury Verdict?

As HFC points out, a mortgage foreclosure judgment serves as a sort of "way-station in the process which culminates in the judicial sale of mortgaged property." HFC Mem. of Law, at 9. By definition, the foreclosing mortgagee already has a lien against the property being foreclosed. As such, the entry of a non-jury verdict in a foreclosure action does not effect a further transfer of the mortgagor's interest in the mortgage property. Indeed, not even the entry of a judgment in foreclosure—and here, only a non-jury verdict was entered—in favor of a mortgagee would effect a further transfer of the mortgaged property. The entry of judgment is a simply procedural prerequisite to a foreclosure sale of the Sellersville Property. It is the foreclosure sale that takes place after the entry of judgment that results in a "transfer" of the mortgaged property because the sale alters the mortgagee's legal and beneficial interest in the property. *See In re Rouse,* 48 B.R. 236, 240 (Bankr.E.D.Pa.1985) (at conclusion of

sheriff's sale, purchaser obtains equitable interest in the subject property, with legal title passing upon acknowledgment and delivery of the sheriff's deed); *Matter of Russell,* 8 B.R. 342, 345 (Bankr.W.D.Pa. 1980) (same). There is no foreclosure sale at issue in this case.[40]

Because I conclude that the only pertinent "transfer" in this AP was the grant of the HFC Mortgage, which occurred in November 2004, (more than ninety days before the commencement of this bankruptcy case), Count I fails to state a cognizable claim upon which relief may be granted. *See* 11 U.S.C. § 547(b)(4). Accordingly, I will dismiss Count I of the AP Complaint. Given the underlying facts and circumstances in this AP, I perceive no possibility that the Debtor can plead additional facts to cure the defect in her § 547 claim. Therefore, unlike the dismissal of the § 544 claim, the dismissal of the § 547 claim is without leave to amend.

## VIII. CONCLUSION

In conclusion, I find that: (1) neither the doctrines of *Rooker–Feldman* nor *Younger* abstention require dismissal of this AP; (2) the Debtor's § 544 claim should be dismissed, but with leave to file an amended complaint; and (3) the Debtor's § 547 claim should be dismissed without leave to amend.

---

simple to the creditor,"); *Commerce Bank v, Mountain View Village, Inc.,* 5 F.3d 34, 38 (3d Cir.1993) ("[i]n defining the relationship between mortgagor and mortgagee, Pennsylvania follows the title theory where the mortgage is considered a conveyance in fee simple to the creditor.") (citing *Randal v. Jersey Mortg., Inv. Co.,* 306 Pa. 1, 158 A. 865 (1932)).

**40.** The cases cited by the Debtor, in support of her argument that the Non–Jury Verdict accomplished a further "transfer" of the Debtor's property beyond that accomplished

by the mortgage transaction itself are inapposite. The Debtor relies upon *In re Rambo,* 297 B.R. 418 (Bankr.E.D.Pa.2003) and *In re Andrews,* 262 B.R. 299 (Bankr.M.D.Pa.2001). In both *Rambo* and *Andrews,* the "transfer" was the foreclosure sale of the Debtor's residence. *See In re Rambo,* 297 B.R. at 423; *In re Andrews,* 262 B.R. at 303. There was no foreclosure sale here; merely a foreclosure lawsuit culminating in a state court "decision," *i.e.,* the Non–Jury Verdict.

498

An Order consistent with the Opinion follows.

## ORDER

**AND NOW,** upon consideration of the Motion to Dismiss Complaint ("the Motion") filed by Household Finance Consumer Discount Company ("HFC"), and after a hearing, and upon consideration of the post-hearing written submissions of the parties, and for the reasons stated in the accompanying Memorandum Opinion,

It is hereby **ORDERED** that:

1. The Motion to Dismiss is **GRANTED.**

2. The Debtor's Complaint is **DISMISSED.**

3. The dismissal of Count I is **WITH PREJUDICE.**

4. The dismissal of Count II is **WITHOUT PREJUDICE.** The Debtor is **GRANTED LEAVE** to file an Amended Complaint setting forth grounds, if such grounds exist, satisfying the conditions found in 11 U.S.C. § 522(g)(1) and (h). Such Amended Complaint shall be filed and served on or before **February 26, 2008.**

5. If the Debtor fails to file an Amended Complaint in a timely fashion under Paragraph 4 of this Order, the **DISMISSAL** of Count II the Complaint shall be **WITH PREJUDICE** as to the Debtor.

6. The **DISMISSAL** of all Counts of the Complaint is **WITHOUT PREJUDICE** to the rights of the Chapter 13 Trustee.